## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| ERIC FRAZIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:20-cv-02950-TLP-tmp |
| v. | ) | |
| | ) | JURY DEMAND |
| RICHARD HOLIDAY, Medical Director, | ) | |
| ANTHONY ALEXANDER, and LEE | ) | |
| HARRIS, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER MODIFYING THE DOCKET, DISMISSING COMPLAINT WITHOUT PREJUDICE, AND GRANTING LEAVE TO AMEND

Plaintiff Eric Frazier[1] sued pro se under 42 U.S.C. § 1983.  (ECF No. 1.)  The Court granted him leave to proceed in forma pauperis and assessed the $350 filing fee.  (ECF No. 4.)

Plaintiff alleges that he caught COVID-19 while he was an inmate at the Shelby County Correctional Center ("the Jail").  (ECF No. 1 at PageID 2.)  After testing positive for COVID-19 in early June 2020, officers placed Plaintiff in "isolation."  (*Id.*)  About a month later, Plaintiff tested negative for COVID-19.  (*Id.*)  So officers released him to the Jail's general population around six weeks after his diagnosis.  (*Id.*)

Plaintiff does not describe what symptoms he experienced while he had COVID-19.  But he alleges that he was "[a]ffected physical[ly], emotional[ly,] [and] psychological[ly]" by the

---

[1] When Plaintiff filed his complaint, he was an inmate at the Shelby County Correctional Center in Memphis, Tennessee.  In March 2021, Plaintiff notified that Court that the State of Tennessee released him on parole.  (ECF No. 5.)  He also updated his address with the Court.  (*Id.*)

virus. (*Id*. at PageID 2 & 3.) And when he filed a grievance at the Jail, he found out that he "wasn't the only inmate" with COVID-19. (*Id*. at PageID 2.)

Plaintiff names as Defendants (1) Richard Holiday, the Jail's medical director, (2) Anthony Alexander, the Director of Shelby County Division of Corrections, and (3) Shelby County Mayor Lee Harris. (*Id*. at PageID 1–2.) And the Court respectfully **DIRECTS** the Clerk to modify the docket to add (1) Shelby County Division of Corrections ("SCDC"), and (2) Shelby County as Defendants. Plaintiff seeks $400,000 in punitive damages. (*Id*. at PageID 3.)

For the reasons explained below, the Court **DISMISSES** the complaint **WITHOUT PREJUDICE** for failure to state a valid claim for relief under 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1)–(2). But the Court **GRANTS** leave to amend.

<u>**LEGAL STANDARDS**</u>

I.      **Screening Requirements Under 28 U.S.C. § 1915A**

The Court has to screen prisoner complaints and dismiss any complaint, or any portion of it, if the complaint—

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B). And in assessing whether the complaint states a claim on which relief may be granted, the Court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).

Under those standards, the Court accepts the complaint's "well-pleaded" factual allegations as true and then decides whether the allegations "plausibly suggest an entitlement to

relief." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations, however, "are not entitled to the assumption of truth," and if a plaintiff asserts legal conclusions in a complaint they "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

And Federal Rule of Civil Procedure 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Twombly*, 550 U.S. at 555. But it also requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 555 n.3.

Even so, courts screening cases will give slightly more deference to pro se complaints than to those drafted by lawyers. "*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). That said, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612–13 (6th Cir. 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and noting "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

## II.    Requirements to State a Claim Under 42 U.S.C. § 1983

Plaintiff sues here under 42 U.S.C. § 1983. To state a claim under this statute, he must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States, and (2) that the defendant caused harm while acting under color of state law. *See*

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).  For his claims to survive screening, Plaintiff must satisfy these requirements.

## ANALYSIS

### I.     Claims Against SCDC and Shelby County

Plaintiff names the Shelby County Division of Corrections as a Defendant.  (ECF No. 1 at PageID 2.)  Because SCDC is a division of county government, the Court construes his claims against it as claims against Shelby County.  Plaintiff's complaint, however, does not state a cognizable § 1983 claim against the County.

Courts may not hold a local government such as a municipality or county "liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory*." Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 691 (1978) (emphasis in original); *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994).

Instead, courts may hold a municipality responsible for a constitutional deprivation only if there is a direct causal link between a municipal policy or custom and the alleged deprivation. *Monell*, 436 U.S. at 691–92; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993).  This means a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).

What is more, a plaintiff must identify an *official* policy or custom that caused his injuries. *See Weaver v. Henderson Cnty.*, No. 16-1134, 2017 WL 90386, at *2 n. 1 (W.D. Tenn. Jan. 10, 2017).  To explain, "the touchstone of 'official policy' is designed 'to distinguish acts of

the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (Brennan, J., concurring) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479–80 (1986) (emphasis in original)).  Plus, the policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983."  *Searcy*, 38 F.3d at 286 (quoting *Polk Co. v. Dodson*, 454 U.S. at 326 (citation omitted)).

Although civil rights plaintiffs need not plead with particularity facts showing municipal liability, the complaint must put the municipality on notice of the plaintiff's theory of liability. *See Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168–69 (1993); *Fowler v. Campbell*, No. 3:06CV-P610-H, 2007 WL 1035007, at *2 (W.D. Ky. Mar. 30, 2007).

Here Plaintiff's complaint fails to identify an official Shelby County policy or custom that injured him.  In fact, Plaintiff does not describe any Shelby County policy or custom at all, let alone an allegedly unconstitutional one.  As a result, Plaintiff does not state a claim against SCDC or Shelby County.[2]

## II.     Official Capacity Claims Against Holiday, Alexander, & Harris

Plaintiff also sues (1) Richard Holiday, the Jail's medical director, (2) Anthony Alexander, the Director of Shelby County Division of Corrections, and (3) Shelby County Mayor

---

[2] If Plaintiff seeks to hold the Jail liable, his claims fail for the same reason.  Under § 1983, a jail is not a "person" subject to suit.  As a result, the Court construes Plaintiff's claims against the Jail as claims against Shelby County.  *See Marbry v. Corr. Med. Serv.*, No. 99-6706, 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000).  And as explained above, Plaintiff does not sufficiently allege a § 1983 claim against Shelby County.  So he fails to state a claim against the Jail too.

Lee Harris. [3]  (ECF No. 1 at PageID 1–2.)  But he fails to specify whether he sues these Defendants in their individual or official capacities.

The Sixth Circuit requires plaintiffs to "set forth clearly in their pleading that they are suing . . . state defendants in their individual capacity for damages, not simply in their capacity as state officials."  *Wells*, 891 F.2d at 592.  And "[a]bsent a specification of capacity, it is presumed that a state official is sued in his official capacity."  *Northcott v. Plunkett*, 42 F. App'x 795, 796 (6th Cir. 2002) (citing *Wells*, 891 F.2d at 593).

Because Plaintiff does not explain what capacity he sues Defendants Holiday, Alexander, and Harris in, the Court treats Plaintiff's allegations against them as official capacity claims. (*See* ECF No. 1.)  And for the reasons noted above, the Court construes those allegations as claims against their employer, Shelby County.  *See Alkire*, 330 F.3d at 810 ("While '[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law,' individuals sued in their official capacities stand in the shoes of the entity they represent." (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985))).

As the Court explained in detail above, Plaintiff fails to allege that any Shelby County policy or custom injured him.  Nor does he allege that these Defendants injured him while acting under a County policy or custom.  In the end, Plaintiff fails to state a claim to relief against these Defendants in their official capacities.

---

[3] Although not referenced in Plaintiff's complaint, Defendant Alexander is the Director of the Shelby County Division of Corrections, and Defendant Harris is Shelby County Mayor.  (*See* https://www.shelbycountytn.gov/26/Corrections.)  Plaintiff alleges that Defendant Holiday is SCDC's medical director.  (ECF No. 1 at PageID 2.)

III.     **Individual Capacity Claims Against Defendants for Unconstitutional Conditions of Confinement**

Plaintiff's individual claims against Defendants fail too.  Plaintiff alleges that he was "[a]ffected physical[ly], emotional[ly,] [and] psychological[ly] by the coronavirus disease at the [Jail]."  (ECF No. 1 at PageID 2–3.)  Although he does not describe the circumstances of his confinement during June and July 2020, the Court liberally construes his complaint to allege unconstitutional conditions of confinement.

The Court looks to the Eighth Amendment to address Plaintiff's allegations of unconstitutional conditions of confinement.  *See generally Wilson v. Seiter*, 501 U.S. 294 (1991).  The Eighth Amendment "prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes."  *Id.* at 297.  This means that prison officials must provide inmates with humane conditions of confinement.  *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  And so, prison officials must give inmates adequate food, clothing, shelter, and medical care.  *See id.* at 347–48.

But "[e]xtreme deprivations are required to make out a conditions-of-confinement claim."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation."  *Id.* (internal quotations and citations omitted).

The Sixth Circuit has also explained,

In certain extreme circumstances, the totality itself may amount to an eighth amendment violation, but there still must exist a specific condition on which to base the eighth amendment claim.  We believe such conditions considered alone or in

> combination [with other conditions], must amount to a deprivation of
> life's necessities, before a violation of the [E]ighth [A]mendment can be found.
>
> . . . [A] specific deprivation of one or more identifiable human needs must be
> established in order to prove an Eighth Amendment violation, [and] the plaintiff
> must show a culpable state of mind on the part of [the defendant] prison officials.

*Berryman v. Johnson*, No. 88-1239 & 88-1280, 1991 WL 150808, at *9–10 (6th Cir. Aug. 6,

1991) (internal quotations and citations omitted); *see also Walker v. Mintzes*, 771 F.2d 920, 925

(6th Cir. 1985). "It is thus settled that Eighth Amendment claims based on prison conditions

have both an objective component (denial of . . . 'the minimal civilized measure of life's

necessities'), and a subjective component ('deliberate indifference')." *Berryman*, 1991 WL

150808, at *10 (internal citations omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 834

(1994).

The objective component requires that the deprivation be "sufficiently serious." *Farmer*,

511 U.S. at 834; *Hudson*, 503 U.S. at 8–9; *Wilson*, 501 U.S. at 928. A prisoner must allege that

he "is incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *see also

Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005). Or he must allege that the defendant

deprived him of the "minimal civilized measure of life's necessities." *Wilson*, 501 U.S. at 298

(quoting *Rhodes*, 452 U.S. at 347); *see also Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004).

The subjective component requires that jail officials acted with requisite intent—that they

had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S.

at 302–03); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009). Under this

requirement, a prison official must subjectively know of an excessive risk of harm to an inmate's

health or safety and choose to disregard that risk. *Farmer*, 511 U.S. at 837 (finding that

plaintiffs must show that prison officials acted with "deliberate indifference" to a substantial risk

that the prisoner would suffer serious harm).  What is more, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  *Id.* at 844.

Plaintiff alleges that he caught COVID-19 while an inmate at the Jail.  (ECF No. 1 at PageID 2.)  After he tested positive, officers placed Plaintiff in "isolation."  (*Id.*)  A month later, Plaintiff tested negative for COVID-19, so officers released him to the Jail's general population. (*Id.*)  All in all, Plaintiff does not allege enough facts about his COVID-19 experience in the Jail. First, he does not allege whether he experienced COVID-19 symptoms.  Nor does he explain whether he suffered any other injuries related to Defendants' handling of the pandemic at the Jail.  Plus, he fails to mention what efforts the Jail took to prevent the spread of COVID-19 during that time.  What is more, Plaintiff does not identify who interacted with him or treated him while he was sick.  (*See* ECF No. 1.)

In any event, the novel coronavirus and the risks associated with it are likely serious enough under the Eighth Amendment's objective prong.  Even so, Plaintiff fails to allege the subjective component.  In other words, he has not alleged that any Defendants subjectively knew of a risk to Plaintiff and then chose to disregard that risk.[4]  In fact, by Plaintiff's own admission,

---

[4] Even more to the point, Plaintiff does not allege that Defendants Holiday, Alexander, or Harris personally took any actions that harmed him.  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).  Here Plaintiff fails to allege any wrongdoing at all by those Defendants.

Jail officials observed COVID-19 safety measures by quarantining him after he tested positive. (ECF No. 1 at PageID 2.)  That action rebuts Plaintiff's claim of their deliberate indifference.

What is more, Plaintiff fails to show that, if Defendants had taken certain COVID-19 precautionary measures, it would have kept him from contracting the virus or from suffering other injury.  Nor does he argue that such measures were in fact feasible during the early stages of the pandemic.  Indeed, the Eighth Amendment does not require perfection on the part of prison officials.  *See United States v. Cato*, No. 14-315-01, 2020 WL 4193055, at *1 n.1 (E.D. Pa. July 21, 2020).  "[Defendant] is not required to have a perfect response to the pandemic— only one that is free from deliberate indifference."  *Kesling v. Tewalt*, 476 F. Supp. 3d 1077, 1088 (D. Idaho 2020).  And according to Plaintiff's complaint, Defendants' response to the pandemic included testing inmates and quarantining those who tested positive.  (*See* ECF No. 1 at PageID 2.)  To be sure, the only reason we know Plaintiff contracted the virus is because Defendants tested him, and the result was positive.  Once they knew he had the virus, Defendants placed him in isolation until her no longer had it.

In the end, even if Plaintiff wanted Defendants to take more health precautions than they did, to make a claim under the Eighth Amendment, Plaintiff must show more.  For example, he does not allege that Defendants withheld necessary COVID-19-related medical care or that Defendants denied him treatment.  Nor does he contend that Defendants Holiday, Alexander, or Harris had anything to do with Plaintiff's COVID-19 infection or his medical care.

For these reasons, Plaintiff fails to state an Eighth Amendment conditions of confinement claim as to any Defendant.

## AMENDMENT UNDER THE PLRA

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid dismissal under the Prison Litigation Reform Act, 28 U.S.C. §§ 1915, et seq. (the "PLRA"). *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). In fact, the Sixth Circuit prefers "liberality" in allowing amendment at the screening stage under the PLRA. *Lucas v. Chalk*, 785 F. App'x 288, 292 (6th Cir. 2019). And the Court has also stated "[i]f it is at all possible that the party . . . can . . . state a claim for relief, the court should dismiss with leave to amend." *Id.* (quoting Brown, 415 F. App'x at 614).

Here, the Court **GRANTS** Plaintiff leave to amend. Plaintiff must file any amendment to his claims on the proper form within 30 days of this Order. The Court also **DIRECTS** the Clerk to send a form to Plaintiff with this Order. An amended complaint will supersede the original complaint and must be complete in itself without reference to the earlier pleadings. Plaintiff must sign the amended complaint, and its text must allege enough facts to support each claim without reference to any extraneous documents. Plaintiff must identify any exhibits by number in the text of the amended complaint and must attach them to the complaint. All claims alleged in an amended complaint must arise from facts alleged in the original complaint. Plaintiff must state each claim for relief in a separate count and must identify each Defendant sued in that count.

If Plaintiff fails to timely amend his complaint, the Court may dismiss this case and enter judgment. The Court will recommend also that any such dismissal of this case be treated as a strike under 28 U.S.C. § 1915(g). *See Simons v. Washington*, 996 F.3d 350, 352 (6th Cir. 2021).

## <u>CONCLUSION</u>

For the reasons explained above, the Court **DISMISSES** the complaint (ECF No. 1)

**WITHOUT PREJUDICE** for failure to state a claim on which relief can be granted and for

seeking monetary relief from a Defendant that is immune from that relief, under 28 U.S.C. §§

1915(e)(2)(B)(ii)–(iii) and 1915A(b)(1)–(2).  The Court also **GRANTS** Plaintiff leave to amend

within 30 days from the entry of this Order.

      **SO ORDERED**, this 4th day of October, 2021.

      s/Thomas L. Parker
      THOMAS L. PARKER
      UNITED STATES DISTRICT JUDGE